Jason **EICHELBERGER,**
Appellant–Petitioner,

v.

**STATE of Indiana, Appellee–**
Respondent.

No. 49A02–0601–PC–55.

Court of Appeals of Indiana.

Aug. 17, 2006.

Transfer Denied Nov. 2, 2006.

---

632

Susan K. Carpenter, Public Defender of Indiana, Linda K. Hughes, Deputy Public Defender Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Jason Eichelberger appeals the post-conviction court's denial of his petition for post-conviction relief. Specifically, he contends that the post-conviction court erred in concluding that his trial counsel was not ineffective for failing to ensure that the jury was properly instructed as to the State's burden of proof for both murder and voluntary manslaughter. Because Eichelberger's trial counsel tendered a flawed instruction on voluntary manslaughter, which improperly included sudden heat as an element of the offense rather than stating that the State bears the burden of disproving its existence beyond a reasonable doubt, and failed to ensure that the jury was properly instructed that the absence of sudden heat is an element of murder on which the State bears the burden of proving beyond a reasonable doubt, which warrants a new trial, Eichelberger's trial counsel was ineffective. We therefore reverse the post-conviction court.

### Facts and Procedural History

The underlying facts in this case, taken from the Indiana Supreme Court's opinion in Eichelberger's direct appeal, are as follows:

> The facts favorable to judgment reveal that on August 17, 1999, James Beasley, Michael Gullett, and the defendant were socializing in the back yard of a residence on East Minnesota Street in Indianapolis. A fight broke out among them, alerting bystanders, who observed Beasley on the ground, and the defendant, holding a knife, standing over him. One bystander called out, "I can't believe you're going to kill him in front of two witnesses," and Beasley escaped. He started running, followed by Gullett and the defendant, who still had the knife in hand. The chase ended two blocks away, when Beasley tripped. Gullett was the first to reach him, and knocked him back down as he attempted to rise. The defendant then caught up, and said, "You made me bleed. [N]ow, [expletive deleted], you're going to bleed." He put his left arm around Beasley's neck and underneath his arm, and stabbed Beasley in the chest with the knife. As Gullett and the defendant ran away, Beasley went to a nearby house for help but died of the stab wound, which had punctured his lung and the left ventricle of his heart.

*Eichelberger v. State,* 773 N.E.2d 264, 266 (Ind.2002) (record citations omitted). The State charged Eichelberger with murder. During trial, Eichelberger's trial counsel tendered an instruction on voluntary manslaughter, which the trial court gave over the State's objection. The trial court also gave an instruction defining sudden heat, which the State had tendered. The jury found Eichelberger guilty of murder, and the trial court sentenced him to the presumptive term of fifty-five years.

On direct appeal, Eichelberger raised one issue: whether the evidence is sufficient to prove that he knowingly killed Beasley. Finding the evidence sufficient, our Supreme Court affirmed his conviction. *Id.* Thereafter, Eichelberger, *pro se,* filed a petition for post-conviction relief, which was amended by counsel in 2005. In his amended petition, Eichelberger argued that his trial counsel was ineffective because he "tendered a flawed instruction on voluntary manslaughter and failed to ensure that the jury was properly instructed as to the elements of murder." Appellant's App. p. 47. After a hearing, the post-conviction court entered findings of fact and conclusions denying Eichelberger relief. Eichelberger now appeals the denial of his petition for post-conviction relief.

## Discussion and Decision

A defendant who has exhausted the direct appeal process may challenge the correctness of his convictions and sentence by filing a post-conviction petition. *Carew v. State,* 817 N.E.2d 281, 285 (Ind. Ct.App.2004), *trans. denied.* Post-conviction procedures do not provide an opportunity for a "super-appeal"; rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* Generally, "complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective assistance of counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). Post-conviction proceedings are civil proceedings, so a defendant must establish his claims by a preponderance of the evidence. *Carew,* 817 N.E.2d at 285.

A petitioner who appeals the denial of post-conviction relief faces a rigorous standard of review. *Benefiel v. State,* 716 N.E.2d 906, 911 (Ind.1999), *reh'g denied.* The reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. *Blunt–Keene v. State,* 708 N.E.2d 17, 19 (Ind.Ct.App.1999). Furthermore, while we do not defer to the post-conviction court's legal conclusions, we accept its factual findings unless they are clearly erroneous. *Carew,* 817 N.E.2d at 285. To prevail on appeal, the petitioner must establish that the evidence is uncontradicted and leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Prowell v. State,* 741 N.E.2d 704, 708 (Ind. 2001).

Eichelberger contends that his trial counsel was ineffective at trial. We review claims of ineffective assistance of trial counsel under the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied. Carew,* 817 N.E.2d at 285–86. First, the petitioner must demonstrate that counsel's performance was deficient because it fell below an objective standard of reasonableness and denied the petitioner the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. *Smith v. State,* 765 N.E.2d 578, 585 (Ind.2002), *reh'g denied.*

Second, the petitioner must demonstrate that he was prejudiced by his counsel's deficient performance. *Wentz v. State,* 766 N.E.2d 351, 360 (Ind.2002), *reh'g denied.* To demonstrate prejudice, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different if his counsel had not made the errors. *Id.* A probability is reasonable if our confidence in the outcome has been undermined. *Id.* If we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we

may do so without addressing whether counsel's performance was deficient. *Id.*

Eichelberger argues that his trial counsel was ineffective because he "tendered a flawed instruction on voluntary manslaughter and failed to ensure the jury was properly instructed as to the elements of murder." Appellant's Br. p. 1. The trial court gave the following jury instruction on murder:

### Instruction Number 19

The crime of murder which the defendant's [sic] Jason Eichelberger and Michael Gullett are charged in Count I of the Information is defined by statute as follows:

"A person who knowingly or intentionally kills another human being, commits Murder, a Felony."

To convict the Defendant, Jason Eichelberger, of the crime of Murder, a Felony, as charged in Count I of the Information, the State must prove each of the following elements:

That the Defendant, Jason Eichelberger on or about August 17, 1999,

1. did knowingly
2. kill another human being, namely: James Beasley,
3. by knocking James Beasley to the ground and stabbing him with a deadly weapon, that is: a knife, thereby inflicting mortal injuries upon James Beasley, causing James Beasley to die.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant, Jason Eichelberger not guilty of Murder, a Felony as charged in Count I of the Information.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant, Jason Eichelberger guilty of Murder, a Felony

as charged in Count I of the Information.

Appellant's App. p. 118–19. The trial court gave an instruction on voluntary manslaughter that Eichelberger's trial counsel had tendered:

### Instruction No. 19(B)

Included in the offense of murder is the offense of voluntary manslaughter. The crime of voluntary manslaughter is defined by statute as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A Felony if it is committed by means of a deadly weapon.

The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter.

To convict the defendant, Jason Eichelberger, the State must have proved each of the following elements.

The defendant

1. knowingly or intentionally
2. killed James Beasley
3. while acting under sudden heat

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant, Jason Eichelberger, not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you may find the defendant guilty of voluntary manslaughter, a Class B Felony.

If you further find beyond a reasonable doubt that the offense was committed by means of a deadly weapon, you may find the defendant guilty of voluntary manslaughter, a Class A Felony.

*Id.* at 122–23. Finally, the trial court gave an instruction defining sudden heat that was tendered by the State:

Instruction Number 19(C)

The term "sudden heat" means an excited mind. It is a condition that may be created by strong emotion such as anger, rage, sudden resentment or jealously [sic]. It may be strong enough to obscure the reason of an ordinary person and prevent deliberation and meditation. It can render a person incapable of rational thought.

*Id.* at 124.

■■ Contrary to Instruction Number 19(B), "[i]t is well settled in Indiana that sudden heat is not an element of voluntary manslaughter." *Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002) (citing *Isom v. State,* 651 N.E.2d 1151, 1152 (Ind. 1995), *reh'g denied; Bane v. State,* 587 N.E.2d 97, 100 (Ind.1992), *reh'g denied; Palmer v. State,* 573 N.E.2d 880 (Ind. 1991); *Wilcoxen v. State,* 705 N.E.2d 198, 203 (Ind.Ct.App.1999), *trans. denied), reh'g denied.* Rather, once a defendant presents evidence of sudden heat, the State bears the burden of disproving its existence beyond a reasonable doubt. *Id.* (citing Ind.Code § 35–42–1–3(b) ("The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter."); *Bane,* 587 N.E.2d at 100). An instruction assigning the burden of affirmatively proving sudden heat to the State is erroneous as a matter of law. *Id.* When properly objected to at trial, it may require a new trial on the murder charge. *Id.* In addition, a trial court's failure to give a jury instruction explaining that the State must negate the presence of sudden heat beyond a reasonable doubt, when requested, necessitates the granting of a new trial. *See Harring-*

*ton v. State,* 516 N.E.2d 65, 66 (Ind.1987), *reh'g denied.*

Here, the State admits that the jury instruction Eichelberger's trial counsel tendered on voluntary manslaughter is erroneous; however, the State argues that the instruction did not prejudice Eichelberger, and therefore, there is no ineffective assistance of counsel. In support of its argument, the State cites several decisions from the Indiana Supreme Court and one from this court. In these decisions, the courts held that a jury instruction incorrectly including sudden heat as an element of voluntary manslaughter is not fundamental error if the instruction also explains that sudden heat is a mitigating factor. *Wilcoxen,* 705 N.E.2d at 203 (citing *Clark v. State,* 668 N.E.2d 1206, 1209 (Ind.1996), *reh'g denied; Isom,* 651 N.E.2d at 1153; *Bane,* 587 N.E.2d at 101). In a more recent opinion from our Supreme Court on this topic, the court stated as follows:

When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, *Isom,* 651 N.E.2d at 1153, and other instructions, *id.; Bane,* 587 N.E.2d at 101. There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law. *Isom,* 651 N.E.2d at 1153. For example, in *Bane,* the jury in a murder trial was instructed in a manner similar to the present case. At one point the instructions stated that sudden heat is an element of voluntary manslaughter and that the State bore the burden of its proof. *Bane,* 587 N.E.2d at 100. However, at another point the instructions informed the jury that sudden heat is a mitigating factor

that reduces what would otherwise be murder to manslaughter. *Id.* This Court found that the instructions were inartfully drafted and technically erroneous, but did not constitute[ ] fundamental error. *Id.* at 101. Similarly, in *Isom,* 651 N.E.2d 1151, although the jury was incorrectly instructed that sudden heat is an element of voluntary manslaughter, it was also informed that sudden heat "acts as a mitigator for reducing what would otherwise be murder to voluntary manslaughter," and was reminded by defense counsel in closing argument that sudden heat acts as a mitigator. *Id.* at 1153. This Court concluded that the challenged sudden heat instruction carried an erroneous suggestion but did not constitute fundamental error. *Id.*

*Boesch,* 778 N.E.2d at 1279–80. The *Boesch* court went on to hold:

> It is highly improbable that the jury in this case was misled as to an accurate legal understanding of sudden heat and its significance. First, as did the instruction in *Bane,* the instruction about which the defendant complains quotes Indiana's voluntary manslaughter statute, which states that "[t]he existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter." Trial Record at 115 (quoting Ind.Code § 35–42–1–3). Second, the instruction that immediately followed stated that "[i]n order to prove the offense of Murder, if there is some evidence of 'sudden heat,' then the State bears the burden in its evidence of negating the existence of sudden heat beyond a reasonable doubt." Trial Record at 116. Finally, the defendant's attorney emphasized the point in his closing argument to the jury[.]

*Id.* at 1280. In contrast to *Boesch,* here the jury was not instructed that in order to prove the offense of murder (as opposed to voluntary manslaughter), if there is some evidence of sudden heat, then the State bears the burden in its evidence of negating the existence of sudden heat beyond a reasonable doubt. This is a critical distinction. Our Supreme Court has even more recently stated that the State must prove the absence of sudden heat to obtain a murder conviction when the defendant has asserted the issue at trial. *Conner v. State,* 829 N.E.2d 21, 24 (Ind.2005). The court also added that it is well settled in Indiana that there is no implied element of the absence of sudden heat on a murder charge. *Id.* (citing *Palmer v. State,* 425 N.E.2d 640, 644 (Ind.1981)). This distinction is further illustrated by the Seventh Circuit's opinion in *Sanders v. Cotton,* 398 F.3d 572 (7th Cir.2005).[1]

In *Sanders,* the defendant was convicted of the murder and attempted murder of his son and his girlfriend, who was also his son's mother. On appeal, this court affirmed his convictions and sentences. Sanders then filed a petition for post-conviction relief on grounds that his voluntary manslaughter and attempted voluntary manslaughter instructions were erroneous and that his appellate counsel was ineffective for failing to challenge those instructions, which the trial court denied. This court affirmed the denial of Sanders' petition for post-conviction relief on appeal. *Sanders v. State,* 764 N.E.2d 705 (Ind.Ct. App.2002), *trans. denied.* Specifically, we found that the trial court's instructions on voluntary manslaughter and attempted voluntary manslaughter were erroneous

---

**1.** In *Conner,* our Supreme Court distinguished *Sanders* because Conner's jury did not receive erroneous instructions on sudden heat or the State's burden of proof. 829 N.E.2d at 25. Here, it is agreed that Eichelberger received an erroneous instruction.

because they indicated that sudden heat was an element of the offense. *Id.* at 713. Citing *Wilcoxen* and *Isom,* however, we noted that a jury instruction that incorrectly includes sudden heat as an element of voluntary manslaughter is not fundamental error when the instruction also explains that sudden heat is a mitigating factor that reduces murder to voluntary manslaughter. *Id.* Therefore, we held that the error was not fundamental because Sanders' jury instructions for voluntary manslaughter and attempted voluntary manslaughter, which erroneously included sudden heat as an element of the offenses, informed the jury that sudden heat is a mitigating factor that reduces what would be murder to voluntary manslaughter. *Id.* As such, we also held that appellate counsel was not ineffective for failing to challenge the jury instructions. *Id.* Our Supreme Court denied transfer, and the United States Supreme Court denied certiorari.

Thereafter, Sanders filed a petition for a writ of habeas corpus in federal district court arguing that his due process rights were violated because the jury instructions did not correctly state the burden of proof and because his appellate counsel was ineffective for not challenging the trial court's refusal to submit a jury instruction that would have correctly stated the burden of proof. The district court denied the writ. However, the Seventh Circuit reversed the denial of habeas corpus. *Sanders,* 398 F.3d at 585. Specifically, the court stated:

> In Sanders's case, the Indiana appellate court held that any error in the manslaughter instruction was rendered harmless by the instruction that "sudden heat is a mitigating circumstance that reduces what otherwise would be murder ... to voluntary manslaughter." The appellate court's analysis was incomplete, though, because it did not address Sanders's argument that without Proposed Instruction Two [2] the jury would have no reason to know that the absence of sudden heat was an element of murder and attempted murder that the State was required to prove beyond a reasonable doubt. The Supreme Court of the United States has held that "the Due Process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and "requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case," *Mullaney v. Wilbur,* 421 U.S. 684, 704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We have explained that "the complete failure to give any jury instruction on an essential element of the offense charged, under circumstances indicating that the jury was not otherwise informed of the necessity of proof of the element, is a violation of due process." *Cole v. Young,* 817 F.2d 412, 423 (7th Cir.1987).

*Id.* at 581–82. The Seventh Circuit observed that in Sanders' case, the jury instructions did not contain any statement that properly placed the burden of proof on the State for showing the absence of sudden heat to gain a *murder* conviction; rather, the only time the jury instructions mentioned the burden of proof for sudden

---

2. Proposed Instruction Two provided:
   You are instructed that in order to find the defendant guilty of the offense of murder or attempted murder, you must find that the state has proven the absence of sudden heat beyond a reasonable doubt.
   *Sanders,* 398 F.3d at 577.

heat was in the manslaughter instructions, where they erroneously required the State to prove the presence of sudden heat. *Id.* at 582. The court noted that without Proposed Instruction Two, *see supra* note 2, the jury was never informed of each of the required elements of the State's proof for murder and attempted murder, and if the jury was not required to find Sanders guilty beyond a reasonable doubt on all the elements of murder and attempted murder, he did not receive the protections of federal due process. *Id.* The court elaborated:

> The Indiana appellate court's reliance on the manslaughter instructions' mitigation language to correct the erroneous instructions was unreasonable because advising the jury that sudden heat is a mitigating factor does nothing to inform it that the absence of sudden heat is an element of murder or attempted murder and that it is the prosecution that bears the burden of proof.

> The Respondent argues that the Indiana appellate court made a reasonable determination that the erroneous instructions, when read as a whole with the other instructions, fully apprised the jury that under Indiana law, sudden heat is a factor that could reduce murder to manslaughter. Instructing the jury that sudden heat is a mitigating factor did not inform them that it was something that the State had to disprove, rather they were left "ignorant of which side bore the burden of proof." *Harrington,* 516 N.E.2d at 66. It is just as reasonable for someone to assume that acting under sudden heat is like the affirmative defense of insanity, where the burden of proof is on the defendant. *See Thompson v. State,* 804 N.E.2d 1146, 1148 (Ind.2004). The jury instructions not only failed to properly state the burden of proof, but affirmatively misstated it when the manslaughter instruc-

tions included the element of proving the existence of sudden heat.

*Id.* Therefore, the court held that because the jury was never instructed that the absence of sudden heat is an element of murder and attempted murder that the State had to prove beyond a reasonable doubt, Sanders had established a violation of his federal due process rights. *Id.* at 583. Accordingly, the Seventh Circuit reversed the district court's denial of Sanders' petition. *Id.* The court also held that Sanders' appellate counsel was ineffective because "if Sanders's counsel had raised this issue on direct appeal, the appellate court would have been bound by law to grant him a new trial." *Id.* at 584.

■ Here, Eichelberger essentially made the same challenge as Sanders. That is, he argued that his trial counsel was ineffective for failing to ensure that the jury was properly instructed as to the burden of proof for both murder and voluntary manslaughter. Like the jury instruction in *Sanders,* the voluntary manslaughter instruction that Eichelberger's trial counsel tendered erroneously stated that the State had to prove beyond a reasonable doubt the presence of sudden heat to obtain a voluntary manslaughter conviction. And even though the voluntary manslaughter instruction also stated that the existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter, Eichelberger's trial counsel failed to ensure that the jury was properly instructed that the absence of sudden heat is an element of murder on which the State bears the burden of proof. *See Conner,* 829 N.E.2d at 24. This is a due process violation that requires a new trial. *See Sanders,* 398 F.3d at 583, 584. As a result, Eichelberger has proved both deficient performance and prejudice on the part of his trial counsel. The post-conviction court erred in

denying Eichelberger's petition for post-conviction relief.

Reversed and remanded.

DARDEN, J., and RILEY, J., concur.